IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF IOWA, CEDAR RAPIDS DIVISION

MICHAEL SMOCK                         )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )   Court No. 1:07-cv-00051
                                      )
IOWA INTERSTATE RAILROAD, LTD.        )   Judge Jon Stuart Scoles
                                      )
    Defendant.                        )

## PLAINTIFF'S TRIAL BRIEF

### CONTENTS

Part I.        Facts

Part II.       Overview of the Federal Employers' Liability Act

Part III.      Plaintiff's Theory of Damages

Part IV.       FRCP 50 Motions

Part V.        Assumption of Risk

Part VI.       Mitigation of Damages

Part VII.      Surveillance Tapes

Part VIII.     Workers' Compensation

Part IX.       Medical Causation

**Part I. Facts**

The operative facts here are not in much dispute. On November 1, 2005, Plaintiff, Michael Smock was employed as a conductor for Defendant, IAIS. Part of his job duties that day required Mr. Smock to direct his train into a siding at New Horizons in Oxford, Iowa. After he operated the switch and as the train was pulling into the siding, Plaintiff fell and injured his ankle.

Mr. Smock reported his injury. The next day the railroad inspected the switch and took photographs.

The IAIS has standards for the construction of switches, but inexplicably, it does not have standards for maintenance of switches and does not maintain its switches to construction standards.

Specifically, IAIS construction standards require a minimum 3-foot flat, level, compacted stone walkway around the switchstand. The photographs taken by IAIS show that at the time of Plaintiff's injury, the walkway was 18" at best.

After Plaintiff operated the switch, he took a step to watch the train enter the siding and to see if the train was going to collide with a close clearance. As he stepped he fell off the edge of the 18" walkway. If IAIS maintained the walkway to its 3-foot standard, the accident never would have occurred.

Moreover, there should not have been a close clearance issue. The IAIS is charged by the terms of the industry agreement to police the siding and prohibit close clearances.

As a result of this occurrence Michael Smock sustained a serious ankle injury. Dr. Sprague released Michael Smock to return to work in February 2007. His loss of earnings between November 2005 and February 2007 is approximately $50,000.00 At his last visit with Dr. Sprague, she noted a permanent deficit in the ankles range of motion.

This is a clear case of negligence with a serious injury. Under the FELA, Plaintiff can expect a significant recovery.

**PART II. Overview of the Federal Employers' Liability Act**

A railroad has a duty to use reasonable care in furnishing its employees with a safe place to work. That duty was recognized at common law and is given force through the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq., *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 558 (1987). Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that shifted part of the "human overhead" of doing business from employees to their employers. *Tiller v. Atlantic Coast Line R.R.,* 318 U.S. 54, 58 (1943). See also *Wilkerson v. McCarthy,* 336 U.S. 53, 68 (1949) Douglas, J., concurring) (FELA "was designed to put on the railroad industry some of the cost for the legs, eyes, arms and lives which it consumed in its operations"). Thus § 1 of the FELA provides that "Every common carrier by railroad ***shall be liable in damages to any person suffering injury while he is employed by such carrier*** for injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51.

To further the FELA's humanitarian purposes, Congress did away with several common-law tort defenses that had effectively barred recovery by injured workers. Specifically, the statute abolished the fellow servant rule, rejected the doctrine of contributory negligence in favor of comparative negligence,

3

prohibited employers from exempting themselves from FELA through contract, and abolished the assumption of risk defense. See 45 U.S.C. §§ 51, 53-55. See also *Consolidated Rail Corp. v. Gottschall*, 512 U.S. 532, 542 (1994). The Supreme Court consistently has stated that FELA should be "liberally construed \*\*\*to further Congress's remedial goal." *Id.* at 543. Thus, a railroad's violation of a statute or regulation has long been held to constitute an "automatic breach of the employer's duty and negligence per se and will result in liability if the violation contributed in fact to the plaintiff's injury." *Walden v. Illinois Cent. Gulf R.R.,* 975 F.2d 361, 364 (7th Cir. 1992). See also *Gottschall*, 512 U.S. at 543; *Kernan v. American Dredging Co.*, 355 U.S. 426, 432-33, 438-39 (1958).

Although the FELA requires the injured party to prove that his railroad employer was negligent, the quantum of proof required to sustain this burden has been substantially diminished. *Baker v. Baltimore & Ohio Railroad Co.,* 502 F.2d 638 (6th Cir. 1974); *Heater v. Chesapeake & Ohio Railway Co.*, 497 F.2d 1243 (7th Cir. 1974). The quantum of fault necessary to support a finding of railroad liability was resolved by the United States Supreme Court in the landmark case of *Rogers v. Missouri-Pacific Railroad Co.*, supra, wherein the Court stated:

> "Under the statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part even the slightest in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.

4

> Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. (See also, *Coray v. Southern Pacific Co.*, 335 U.S. 520 (1949), 93 L.Ed. 208).

Under *Rogers,* then, Plaintiff need only demonstrate that the employer was negligent in some capacity and that its negligent conduct contributed in some degree to the employee's injury.

Furthermore, in considering the acts of the railroad in order to determine whether or not they are negligent, the conduct of the railroad may be viewed as a whole, rather than isolating specific incidents for the purpose of analysis, especially where the elements indicating negligence are entwined and where each imparts character of the other. *Blair v. Baltimore & Ohio Railroad Co.*, 323 U.S. 600 (1945), 89 L.Ed.490. The traditional "but for" test in determining proximate causation, which is often a critical issue in standard negligence case, has been cast aside in the FELA in favor of a less demanding burden under which the railroad may be held liable where its negligent conduct contributes in any way, even the slightest, to the injury sustained by the employee.

An employee's claim under the FELA does not depend on showing that the injury was caused by a particular negligent act. *Massimiani v. Monongahela Ry.*, 339 F. Supp. 832, 833 (W.D.Pa. 1972), but may be caused by the cumulative effect of a series of incidents, *Fowles v. Pennsylvania Railroad*, supra, 264 F.2d at 397, or due to the employee's weakened condition, *Dunn v. Conemauch & Black Lick R.R.,* supra, 162 F. Supp. at 330; recovery

5

for the resulting injury may be had under the FELA. *Dunn v. Conemauch & Black Lick R.R.,* 267 F.2d 571 (3rd Cir. 1959); *Nuttall v. Reading Co.,* 235 F.2d 546 (3rd Cir. 1956).

The railroad had a duty to devise a safe method of operation to perform the duties assigned to plaintiff where the railroad had actual or constructive notice of the dangers inherent in the proposed operation, *D & R.G.W. Railroad v. Conley*, 293 F.2d 612 1961).

In the instant case, there will be no evidence of contributory negligence to warrant instructing the jury on that issue. The burden of proving contributory negligence in an FELA case falls upon the defendant. *Birchem v. Burlington Northern Railroad Co.,* 812 F.2d 1047, 1049 (8th Cir. 1987). The Eighth Circuit in that case held the railroad could not use a ploy, such as an alleged affirmative duty on the part of the plaintiff to countermand the directive of his supervisor, to get around the railroad's nondelegable duty to provide its employee a safe place to work.

*In Taylor v. Burlington Northern Railroad*, 787 F.2d 1309, 1316 (9th Cir. 1986), the Court held, as a matter of law, that an employee who enters the work place for a routine assignment in compliance with the orders of his supervisor, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but is engaging in an assumption of the risk. Michael Smock therefore, as a matter of law, cannot be held to have assumed the risk of his employment and he was not contributorily

6

negligent because it will be uncontroverted that he performed the work in compliance with custom and practice and the direction of his supervisor, and did not add to the risk of his injury in any manner.

In *Wilson v. Burlington Northern, Inc.,* 670 F.2d 780 (8th Cir. 1982), the trial court instructed the jury pertaining to contributory negligence and was reversed on appeal for doing it. The Plaintiff in that case was asked to assist three men in carrying a pan, which weighed approximately 290 pounds and was injured in the process. The IAIS, a Corporation and NEW HORIZON FS, INC., a Corporation claimed that a contributory negligence instruction was proper because the Plaintiff should have used a jack or got more help. The Court found the railroad's argument were inconsistent with the realities of the workplace and held that it was reversible error to instruct on the issue of contributory negligence. *Id.* at 783. Here the same result must follow in this case where the evidence will demonstrate that the Plaintiff was required to lift a crossarm weighing over forty pounds while standing at the top of a pole by means of a safety belt and gaffs.

In *Dixon v. Penn Central Company*, 481 F.2d 833, 836-838 (6th Cir. 1973), the Court held that affirmative evidence to support a contributory negligence charge must be presented by the railroad, such as the Plaintiff overexerted himself, what the appropriate amount of exertion was under the circumstances, and that the Plaintiff would not have been injured had he only put forth the
7

appropriate amount of exertion.  The Court in *Dixon* held that it was error to instruct on contributory negligence and Plaintiff's Motion for Judgment N.O.V. for the full amount of the verdict should have been granted.

In *Kalanick v. Burlington Northern Railroad Company*, 788 P.2d 901 (Mont. 1990), strong support is provided for the Plaintiff's position.  In that case, the Plaintiff and his partner were required to perform heavy lifting, without the benefit of mechanical equipment.  The Plaintiff testified that he was required to follow the orders of his supervisor rather than refuse to do the work.  The supervisor there also admitted that it was his responsibility to make sure there was sufficient manpower and equipment to perform the work safely.  The railroad alleged that the Plaintiff was guilty of contributory negligence because he should have requested additional manpower or equipment, used "safer" lifting techniques, or employed better discretion as to which items he lifted.  The Montana Supreme Court concluded the duties of the railroad and its employees were not equal and that the railroad was attempting to interject the defense of assumption of the risk contrary to 45 U.S.C. sec. 54.

**PART III. PLAINTIFF'S THEORY OF DAMAGES**

Once an FELA Plaintiff has established liability, he is entitled to recover damages for loss of wages, and/or loss of or impairment of earning capacity.  *Wiles v. New York, C.& St. L.R.Co.,* 283 F.2d 328, cert. denied (1960), 364 U.S. 900. Plaintiff may also recover for the reasonable cost of past

medical expenses.  It has long been held that he is also entitled to monetary damages for past pain and suffering.  *Chesapeake & Ohio R.Co. v. Carnahan*, 241 U.S. 241 (1935).  In addition, the FELA Plaintiff is entitled to monetary compensation for disfigurement and disability caused by his employer's negligence.  *Erie R.Co. v. Collins*, 253 U.S. 77 (1920).

**PART IV. PLAINTIFF'S FRCP 50 MOTIONS**

Plaintiff will make a FRCP Rule 50 Motion for Judgment as a Matter of Law that he was free from contributory negligence.  His Motion will be based on the fact that there will be no evidence that he acted other than a reasonably prudent man under the circumstances. Plaintiff's duty does not include anticipating the negligence of his employer in failing to provide him a reasonably safe place to work.  By operation of 45 U.S.C. sec. 54, Congress abolished assumption of risk as a defense; Plaintiff cannot be held to assume the risks of his employment.  <u>Taylor v. Burlington Northern Railroad Co.</u>, 812 F.2d 1047, 1049 (8th Cir. 1987); <u>Tiller v. Atlantic Coast Line R. Co.</u>, 318 U.S. 54, 63 S. Ct. 444.

Plaintiff will also move for Judgment as a Matter of Law pursuant to F.R.C.P. Rule 50, that Defendant, IAIS, a Corporation, was negligent in failing to provide him a reasonably safe place to work.  Plaintiff is required to show that only some negligence, even the slightest, was a cause in whole or in part, of his injuries.  *Rogers v. Missouri-Pacific Railroad Co.,* 352 U.S. 500 (1957), 77 S.Ct. 443, 1 L.Ed. 2d 493.

9

**PART V. Assumption of Risk**

"Knowledgeable acceptance of a dangerous condition that is necessary for an employee to perform his duties constitutes an assumption of risk." *Birchem v. Burlington Northern Railroad Company*, 812 F.2d 1047 (8th Cir. 1987). The employer's defense of assumption of the risk has been abolished in FELA cases. 45 U.S.C. § 54. *Tiller v. Atlantic Coast Line Railroad*, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943).

In *Taylor v. Burlington Northern Railroad Company*, 787 F.2d 1309 (1986), the court stated at page 1316, "The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or supervising agents, who by such entry incurs risks not extraordinary in scope is not contributorily negligent, but rather is engaging in an assumption of risk."

Here, the Plaintiff was required to work in a location with a known risk. The Plaintiff knew of the danger and was performing his assignment as ordered by his supervisor. The Plaintiff assumed the risk of his employment and cannot be guilty of contributory negligence under those circumstances.

**PART VI. MITIGATION OF DAMAGES**

A railroad employee has the duty to mitigate his economic loss by returning to gainful employment as soon as practicable. Failure to mitigate is an affirmative defense that must be plead by the Defendant. Most importantly, the Defendant has the burden

10

of proof in establishing a failure to mitigate, and the jury must be instructed it is the Defendant's burden. *Brown v. Chicago & Northwestern R.R.*, 162 Ill. App.3d 926, 516 N.E.2d 320 (1987*); Trujo v. Denver & Rio Grande Western R.R.*, 568 F.2d 181 (1997).

Here, the Defendant has failed to sustain its burden on its claimed defense of failure to mitigate. In *Edwards v. AT & SF*, 291 Ill. App. 3d 817, 684 N.E.2d 919 (1997), the court refused to allow the railroad to present evidence on its failure to mitigate defense. Relying on the restatement of Torts, the court found the railroads' evidence of possible other jobs too speculative to be admitted. Restatement (second) of Torts § 918, comment J, at 506.

In this case, Plaintiff has done everything humanly possible to return to gainful employment as soon as practicable after his injury. Therefore, Plaintiff is entitled to Judgment as a Matter of Law on Defendant's affirmative defense of failure to mitigate.

**PART VII. Surveillance Tapes**

Plaintiff sent discovery requests to the railroad asking for a) all videotapes involving Plaintiff and b) all surveillance videos. The Railroad never disclosed the existence of any videotape. Defendant may claim that because any videotapes are work products they had no obligation to disclose their existence.

This course is in direct violation of Federal Rules of Civil Procedure, Rule 26(b)(5):

> When a party withholds information otherwise discoverable under these rules by claiming

11

> that it is privileged or subject to
> protection as trial preparation material, the
> party shall make the claim expressly and
> shall describe the nature of the documents,
> communications, or things not produced or
> disclosed in a manner that, without revealing
> information itself privileged or protected,
> will enable other parties to assess the
> applicability of the privilege or protection.

There is neither statute nor case law that permits a Defendant to withhold information on the <u>existence</u> of discoverable material. Such conduct would violate Rule 26(g).

Rule 34 requires the production of videotapes. There is no statutory exception for surveillance videotapes. In interpreting a statutory enactment, courts should give meaning to Congress's plain language. *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012 (1985). Early on it was noted that amendments to the Federal Rules should only be made through proper channels. *Wild v. Payson*, 7 F.R.D. 495. A district court may not exercise its inherent authority in a manner inconsistent with a rule or statute. *G. Heileman Brewing v. Jos. Oats Corp.*, 871 F.2d 648 (7th Cir. 1989).

Although some courts have crafted an exception to Rule 34 for surveillance films, those cases are incorrectly decided. The Federal Rules of Civil Procedure do not except surveillance tapes, and no basis exists for such an exception.

Even those courts that have permitted exception for surveillance videotape require:

> 1. That the existence of videotapes be disclosed in discovery;

12

2.  That the tapes be produced during discovery, but
        after Plaintiff's deposition.

The rationale is that if Plaintiff sees the videotapes before his deposition, he can change his deposition testimony. However, these courts also note that there is a valid reason for the Defendant to lie regarding surveillance tapes. Only if the videotapes are produced during discovery can the veracity of the tape be tested.

Some Defendants have argued that Rule 26(a)(3) does not require the production of impeachment evidence. However, that provision only applies to automatic disclosure under Rule 26 and does not affect a Defendant's obligation to respond to a Rule 34 request.

The following cases require the disclosure of the existence of surveillance and the production of videotapes during discovery, but after Plaintiff's deposition:

*Ward v. CSX Transportation*, 161 F.R.D. 38 (E.D.N.C. 1995);

*Snead v. American Export*, 59 F.R.D. 148 (E.D.Pa. 1973);

*Blount v. Wake Electric*, 162 F.R.D. 102 (E.D.N.C. 1993);

*Smith v. CSX Transportation*, 1994 WL 762208 (E.D.N.C.);

*Ford v. CSX Transportation*, 162 F.R.D. 108 (E.D.N.C. 1995);

*Corrigan v. Methodist Hosp.*, 158 F.R.D. 54 (E.D.Pa. 1994);

*Pioneer Lumber v. Bartels*, 673 N.E.2d 12 (Ind. 1996);

*Fisher v. National RR Passenger Corp.*, 152 F.R.D. 145 (S.D.Ind. 1993); and

*Boyle v. CSX Transportation*, 142 F.R.D. 38 (S.D.W.Va. 1992).

13

In *Wegner v. Cliff Veissman*, 153 F.R.D. 154 (N.D.Ia. 1994), the court ordered the production of surveillance videotapes when requested before Plaintiff's deposition.

A Defendant has no basis not to identify the existence of surveillance videotapes in discovery. Although Rule 34 would seem to indicate otherwise, some courts only require the production of these videotapes after Plaintiff is deposed, but before the close of discovery. This is so Plaintiff can conduct his own discovery into the veracity of the surveillance films. Defendant must be barred from introducing any surveillance videotapes.

**PART VIII. Workers' Compensation**

In FELA cases tried to a jury, invariably the issue arises whether Plaintiff has received workers' compensation payments, seeing that Plaintiff was injured at work. Railroad employees do not receive workers' compensation, and in order to avoid any confusion, the jury must be instructed that Plaintiff's only remedy is under the FELA and that he is not covered by state workers' compensation laws.

There is a real danger that a jury in FELA cases will undercompensate an injured Plaintiff on a mistaken belief that the Plaintiff has received state law workers' compensation payments.

When faced with the possibility of overcompensating a Plaintiff because of the lack of tax on an award, the United States Supreme Court held it reversible error not to give an

14

instruction.  *Liepelt v. N&W Ry. Co.,* 444 U.S. 490, 100 S.Ct. 755 (1980).  The Court quoted *Burlington Northern R.R. v. Boxberger,* 529 F.2d 284, 297 (1975), "to put the matter simply, giving the instruction can do no harm and it can certainly help by preventing the jury from inflating the award and thus overcompensating the Plaintiff on the basis of an erroneous assumption that the judgment will be taxable."  The same reasoning is applicable here, advising the jury that Plaintiff is not subject to state workers' compensation laws and has not received any such benefit can do no harm and can certainly help by preventing the jury from deflating the award and thus, undercompensating the Plaintiff on the basis of an erroneous assumption that Plaintiff has received some other compensation. More importantly, it is a correct statement of the law.

The court in *Bohme V. Southern Pacific Co.*, 8 Cal. App. 3d 297, 87 Col. Reporter 286 (1970), upheld such an instruction. *Stillman v. N&W Ry*. 811 F.2d 834 (4th Cir. 1987) offers no support for instructing the jury.  In *Stillman*, after a verdict was returned in favor of the railroad, Plaintiff appealed.  One error alleged by Plaintiff was the refusal of the district court to allow Plaintiff's attorney to argue that recovery under the FELA was Plaintiff's only remedy and that he would receive no workers' compensation benefits.  The circuit court refused to overturn the verdict on this basis. The court based its decision on *Eichel v. New York Central R.R. Co.*, 375 U.S. 253, 84 S.Ct. 316 (1963), which held collateral source evidence of Railroad

15

Retirement Board payments received by Plaintiff were not admissible. The court in *Stillman* said "we perceive no reason for a different rule when the Plaintiff in an FELA case seeks to inform the jury of the absence of benefits from a collateral source."

With all due respect, this reasoning is absolutely wrong. The collateral source rule is an integral part of the common law of torts. The collateral source rule is based on the public policy that a tortfeasor should not benefit from the foresight of his victim in making arrangements for his finances in case of an injury.

This strong public policy is the reason for the United States Supreme Court's ruling in Eichel. There is no such policy to support the railroad's position that a jury should be told the truth about the lack of workers' compensation benefits for railroad employees. The *Stillman* court is just plain wrong.

Here, under the rationale of *Liepelt*, *Boxberger* and *Bohme*, *Supra*, the jury must be told that Plaintiff is not subject to state workers' compensation laws, that he has received no such benefits, and that the FELA is his only remedy.

**PART IX. MEDICAL CAUSATION**

In actions brought under the Federal Employers Liability Act, Plaintiff retains the burden of establishing a causal relationship between the Railroad's acts or omissions and the injury sustained by the employee. However, because this

16

statutory action is designed to compensate injured railroad employees, Plaintiff's burden of establishing medical causation is significantly less than a common law area.

The miniscule burden on Plaintiff of establishing medical causation has been described as "feather weight" by the Seventh Circuit in *Cella v. USA*, 998 F.2d 418, 427 (7th Cir. 1993). *Cella* involved a seaman who brought suit under the Jones Act. The identical standard applies to FELA cases. 998 F.2d 429, FN 10. *Cella* was injured while working as a civilian on a Navy vessel. He was later diagnosed with polymyositis. Plaintiff produced an expert at trial to link the incident on board the ship with the diagnosis of polymyositis. Defendant appealed claiming the district court erred in admitting testimony on medical causation because many doctors regard the etiology of polymyositis as unknown. The Seventh Circuit affirmed the award in favor of Plaintiff.

The Court noted that "Plaintiff must merely establish that the employer's acts or omissions played some part, no matter how small, in producing the employee's injury." 998 F.2d 428. Citing *Alverez v. J. Ray McDermott,* 674 F.2d 1037 (5th Cir. 1982), the Seventh Circuit adopted the "producing cause" standard of causation.

The *Alvarez* Court explained the significant difference between traditional common law definitions of proximate cause and the producing cause standard in FELA causes. The *Alvarez* court stated: "The producing cause standard, that used for Jones Act

17

negligence, is the FELA lax standard, incorporating any cause regardless of its immediacy." 674 F.2d 1042. The *Alvarez* Court further noted, "It is failing to take account of this distinction that the trial judge can easily commit reversible error." 674 F.2d 1043, FN 4.

Both *Cella* and *Alvarez* rely on the United States Supreme Court Opinion in *Sentilles v. Inter-Caribbean Shipping Corp.* 361 U.S. 107, 80 S. Ct. 173, 4 L. Ed. 2d 142 (1959). *Sentilles* stands for the proposition that any evidence which creates an inference of medical causation must be resolved by the jury in FELA claims, even where no expert medical opinion with any reasonable degree of certainty, is introduced. In *Sentilles,* Plaintiff claimed his tuberculosis was aggravated by a shipboard incident. No physician was able to say that the incident caused the aggravation, only that it was possible. The Supreme Court said:

> "The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause. Neither can it be impaired by the lack of medical unanimity as to the respective likelihood of the potential causes of the aggravation, or by the fact that other potential causes of the aggravation existed and were not conclusively negated by the proofs. The matter does not turn on the use of particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation. They were entitled to take all the circumstances, including the medical testimony into consideration." 361 U.S. 109, 110.

Here the issue of medical causation is strictly for the jury.

18

Respectfully submitted,


s/George T. Brugess
George T. Brugess

Attorney for Plaintiff
Hoey and Farina, P.C
542 S. Dearborn Street
Suite 200
Chicago, IL 60605
(312) 939-1212

19