IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| MICHAEL SMOCK,<br><br>Plaintiff,<br><br>vs.<br><br>IOWA INTERSTATE RAILROAD,<br>LTD., a Corporation.<br><br>Defendant. | No. C07-0051<br><br>RULING ON MOTIONS IN LIMINE |

On the 31st day of October 2008, this matter came on for telephonic hearing on the Motion in Limine Re: Evidence of Other IAIS Employee Injuries (docket number 49), Motion in Limine Re: Switch Maintenance Standards (docket number 51), Motion in Limine Re: Plaintiff's Medical Experts (docket number 55), Motion in Limine Re: Attorney's Letters (docket number 56), and Motion in Limine Re: Absence of Worker's Compensation (docket number 57), all filed by Defendant Iowa Interstate Railroad, Ltd.; and the Motion in Limine #1 (docket number 54) filed by Plaintiff Michael Smock. Plaintiff was represented by his attorney, George T. Brugess. Defendant was represented by its attorneys, Edward J. Krug and Sasha L. Monthei.

### I. IAIS'S MOTION IN LIMINE RE: EVIDENCE OF OTHER IAIS EMPLOYEE INJURIES

Defendant Iowa Interstate Railroad, Ltd. ("IAIS") asks the Court to enter an order precluding Plaintiff from offering evidence or argument regarding "other IAIS employee injuries or terminations." Plaintiff did not file a resistance to the motion and Mr. Brugess indicated at the time of hearing that Plaintiff has no objection. Accordingly, the Court finds that the motion will be granted. Plaintiff must not offer any evidence or argument

1

regarding other IAIS employees' injuries or terminations, and shall instruct his witnesses not to volunteer any information in that regard.

## II. IAIS'S MOTION IN LIMINE RE: SWITCH MAINTENANCE STANDARDS

IAIS asks the Court to prohibit Plaintiff's counsel "from questioning any witness about standards for construction or maintenance of railroad track switches promulgated by other railroads." This motion addresses the scope of testimony which may be elicited from Patrick Sheldon, IAIS's vice-president of engineering. IAIS argues that Plaintiff should not be permitted to elicit testimony regarding standards employed by other railroads, nor may it seek expert testimony from Sheldon regarding general "industry standards."

Clearly, Mr. Sheldon can testify as a fact witness regarding information within his knowledge. For example, it is anticipated that Sheldon will testify that IAIS owns the switch stand and surrounding property where Smock fell, and was responsible for its maintenance. Sheldon will also presumably testify regarding actions taken by IAIS to maintain the area. The fighting issue is whether Smock can elicit expert testimony from Sheldon, such as whether the maintenance of the switch stand complied with industry standards, and whether Sheldon can be questioned regarding standards employed by other specified railroads.

Whether or not a party complies with industry standards is relevant to the issue of negligence. *Fulton v. St. Louis-San Francisco Ry. Co.*, 675 F.2d 1130, 1133 (10th Cir. 1982) ("A court may permit a jury to consider as evidence of negligence the failure to comply with relevant national rules or standards of conduct.") (cited with approval in *Moses v. Union Pacific R.R.*, 64 F.3d 413, 419 (8th Cir. 1995)). However, whether there is an industry standard regarding the maintenance of a switch stand, and whether or not IAIS complied with that standard, requires specialized knowledge by an expert witness. FED. R. EVID. 702.

Smock did not identify any expert witnesses. Instead, he apparently seeks to elicit expert testimony from Mr. Sheldon. One party to a lawsuit may call an expert witness who has been identified by the other party.

> [A] designated expert witness may not withhold, upon inquiry, opinions which he may hold or which he may be required by appropriate inquiry to formulate, within the area of his expertise, simply because the inquiring party is not the party that has retained him.

*Selvidge v. United States*, 160 F.R.D. 153, 156 (D. Kan. 1995). *See also Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1086 at n.10 (C.D. Cal. 2001).

It is the Court's understanding that Sheldon will testify as a fact witness regarding the ownership and maintenance of the switch stand. IAIS has not identified Sheldon as an expert witness, and apparently Defendant's counsel does not intend to ask Sheldon whether or not IAIS's maintenance of the switch stand complied with industry standards. The Court concludes that Smock will not be permitted to elicit expert testimony from Sheldon, when neither party has identified him as an expert witness. The motion is granted.

### III. PLAINTIFF'S MOTION IN LIMINE #1

Smock asks the Court to "bar any evidence of discipline assessed by the Railroad." Apparently, the evidence will show that Smock was fired from his employment at IAIS for submitting a return to work slip which had been altered to ostensibly extend the time he was released from work. IAIS filed a resistance to Smock's motion, arguing that the circumstances surrounding Smock's termination are relevant to his claim for damages.

In his proposed jury instruction number 12, Plaintiff identifies one of the elements of damage as "[t]he earnings plaintiff Michael Smock has lost to date." To make such a finding, the jury will presumably be told that Plaintiff is no longer working for IAIS. IAIS does not claim that Smock is prohibited from offering testimony regarding damages which were allegedly sustained following his termination, but merely argues that the circumstances surrounding his termination are relevant to the issue of future damages. If

the jury is not told of the circumstances surrounding Plaintiff's termination, it could be left to speculate that he was terminated due to his medical condition.

In support of his motion, Smock cites *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507 (7th Cir. 1993). There, the plaintiff brought an action under the FELA to recover for injuries sustained in an altercation with his supervisor. Nearly one year after the altercation, the plaintiff was terminated from his employment at the railroad when he refused to return to work after being released by the doctors. The plaintiff appealed his termination under the Railway Labor Act ("RLA"). The reviewing board affirmed the plaintiff's termination from employment, concluding that "claimant was attempting to substitute his personal opinion as to his ability to return to work for the professional opinions of the several medical doctors involved." *Id.* at 510. The plaintiff then filed a FELA action, seeking damages resulting from his injuries.

The district court in *Kulavic* concluded that the findings by the board in the RLA proceeding should be given preclusive effect in the subsequent FELA action. The reviewing board in the RLA proceeding found that the plaintiff was physically capable of returning to work. According to the district court, "this determination required a conclusion that Mr. Kulavic had no right to future wages and compensation for loss of earning capacity because he was able to return to work." *Id.* at 511.Therefore, at the trial of the FELA claim, the district court allowed the plaintiff to present evidence regarding past and future medical bills, pain and suffering, disability resulting from injury, and lost earnings between the time of injury and the date of the plaintiff's discharge. The district court prohibited the plaintiff, however, from seeking lost earnings, fringe benefits, and loss of earning capacity from the date of his discharge onward. The Seventh Circuit Court of Appeals reversed and remanded, concluding that the reviewing board's arbitration decision in the RLA proceeding did not have preclusive effect in the subsequent FELA action. Therefore, Kulavic was entitled to seek economic damages which accrued following his termination from employment.

The Court concludes that the holding in *Kulavic* has no application to the issue presented here. In *Kulavic*, the Court held that an arbitration finding under the RLA had no preclusive effect in a subsequent FELA action. That is, the plaintiff could *claim* damages for lost wages following his termination, notwithstanding the fact that the review board in the RLA proceeding found that he was able to return to work. In the instant action, IAIS does not claim a preclusive effect of any prior finding, but rather argues that the circumstances surrounding Smock's termination are relevant to his claim for lost earnings. The Court concludes that if Plaintiff is seeking damages following his termination at IAIS, then Defendant is entitled to offer testimony regarding the circumstances surrounding that termination. *Ferren v. National R.R. Passenger Corp.*, 2001 WL 1607586 (N.D. Ill. 2001). Plaintiff's motion in limine #1 is denied.

## IV. IAIS'S MOTION IN LIMINE RE: PLAINTIFF'S MEDICAL EXPERTS

Smock has identified three doctors who will testify regarding his medical condition: Dr. Brian Johns, Dr. Sprague, and Dr. Thomas D. Burg. IAIS concedes that the treating physicians may testify regarding their examinations and diagnoses, but asks the Court to preclude Plaintiff from eliciting "causation and prognosis opinions."

In his response to interrogatory number 9, Plaintiff indicated that his "treating physicians will testify consistent with their medical records." A treating physician testifying about his observations based on personal knowledge is not considered an expert witness. *Magelky v. BNSF Ry. Co.*, 2008 WL 281778 (D.N.D.) (citing *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999)). Thus, a treating physician may be called to testify at trial without any requirement for a written report normally required of expert witnesses. *See* FED. R. CIV. P. 26(a)(2), Advisory Committee Notes (1993).

A different rule applies, however, if the treating physician will testify regarding causation. A treating physician's expert opinion on causation is subject to the same rules that govern other expert opinions. *Bland v. Verizon Wireless*, 538 F.3d 893, 897 (8th Cir. 2008); *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000) ("A

treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation."). "[W]hen the testimony of a treating physician goes beyond the scope of treatment, observation and diagnosis, and includes opinions on causation, prognosis or the future impact of the injury, the treating physician must provide a report satisfying the requirements of Rule 26(a)(2)(B)." *Smith v. Bankers Life and Cas. Co.*, 2008 WL 2845080 at *4 (S.D. Iowa 2008) (citing *Griffith v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 233 F.R.D. 513 (N.D. Ill. 2006)).

> That does not mean that a treating physician cannot testify at trial; if the physician has been disclosed pursuant to Rule 26(a)(2)(A), the physician may testify as to the nature and extent of the injury he observed and diagnosed, and the treatment that he rendered for that injury. However, without a report satisfying the requirements of Rule 26(a)(2)(B), the treating physician cannot testify as to causation, prognosis or future disability.

*Id.* at 5 (quoting *Griffith*, 233 F.R.D. at 518-519).

In this case, Plaintiff did not identify any expert witnesses, and did not provide any reports under Rule 26(a)(2)(B). Accordingly, he cannot elicit expert testimony by the treating physicians regarding causation. Similarly, the treating physicians may not testify regarding their prognoses, if any. The treating physicians may testify, however, regarding their examinations, findings, and treatment, consistent with their medical reports.

### V. IAIS'S MOTION IN LIMINE RE: ATTORNEY'S LETTERS

IAIS asks the Court to prohibit Plaintiff from offering into evidence two letters authored by Defendant's attorney. *See* Plaintiff's Exhibits 11 and 12. In the letter dated April 21, 2006, Mr. Krug refers to Smock's right to elect COBRA coverage. In the letter of April 28, 2006, Mr. Krug states that IAIS "will not authorize the MRI for Mr. Smock." Smock did not file any resistance to this motion. At the time of hearing, Mr. Brugess agreed that he would not offer any evidence or argument regarding these letters without

first bringing the issue to the attention of the Court outside the presence of the jury. Accordingly, the Court finds that the motion will be granted.

### VI. *IAIS'S MOTION IN LIMINE RE: ABSENCE OF WORKER'S COMPENSATION*

IAIS asks the Court to preclude Smock "from advising the jury or otherwise commenting on the absence of worker's compensation benefits or otherwise stating the purpose of the Federal Employer's Liability Act." Smock did not file a resistance to the motion and Mr. Brugess agreed at the hearing that no evidence or argument would be presented in this regard without first bringing the matter to the attention of the Court. Accordingly, the Court finds that the motion will be granted.

### ORDER

IT IS THEREFORE ORDERED that the Motions in Limine (docket numbers 49, 51, 54, 55, 56, and 57) are hereby **GRANTED** in part and **DENIED** in part, as set forth above.

DATED this 7th day of November, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA